UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JEFFREY S. YAGER, M.D. d/b/a YAGER ESTHETICS|
ESTETICA™,

                Plaintiff,                                 Index No. 16-CV-9367 (DLC)(GWG)

v.

ITALIA VIGNIERI and TS COSMETIC SURGERY
& SKIN SPA,
                Defendants.
------------------------------------------------------------------------X


## DEFENDANT ITALIA VIGNIERI'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

                                        Nicole J. Coward
                                        Comrie & Coward LLP
                                        *Attorneys for Defendant*
                                        148 South Long Beach Avenue
                                        Freeport, New York 11520
                                        T:  516.544.4292
                                        F:  516.623.5281
                                        E: ncoward@candcllp.com

# **TABLE OF AUTHORITIES**

Cases

*Celotex Corp. v. Catrett*,
477 U.S. 317, 323-24(1986) ...................................................................................2

*Fields v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
301 F. Supp. 2d 259, 264 (SDNY 2004) ..................................................................5

*Free Country Ltd. v. Drennen*,
Index No. 16-CV 8746(JSR), 2016 WL 7635516 (SDNY Dec. 30, 2016) .................8

*Ingraham v. Carroll*,
90 N.Y.2d 592, 599 (1997) .......................................................................................4

*Pincione v. D'Alfonso*
2011 WL 4089885 ....................................................................................................4

*Somn v. Total Community Management Corp.*,
494 F. Supp. 2d 153, 160 (EDNY 2007) ..................................................................5

*Syntel Sterling Best Shores Mauritius Ltd. V. Trizetto Grp. Inc.*,
No 15-CV-211 (LGS)(RLE), 2016 WL 5338550 (SDNY, Sept. 23, 2016). ...............7

*United States v. Aleynikov*, 676 F.3d 71, 76,
2d Cir. 2012980 N.Y.S.2d 716 (Sup.Ct 2013)...........................................................4

*United States ex. rel. Romano v. N.Y. Presbyterian*,
426 F.Supp.2d 174 (SDNY 2006) ............................................................................9

Statutes and Regulations

18 U.S.C. § 1831..................................................................................................2,4

18 U.S.C. § 1836...............................................................................................passim

28 U.S.C. § 1331..................................................................................................2,4

28 U.S.C. § 1367.....................................................................................................4

18 U.S.C. §1839...................................................................................................4,6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JEFFREY S. YAGER, M.D. d/b/a YAGER ESTHETICS|
ESTETICA™,

                Plaintiff,                              Index No. 16-CV-9367 (DLC)(GWG)

v.

ITALIA VIGNIERI and TS COSMETIC SURGERY
& SKIN SPA,
                Defendants.
------------------------------------------------------------------------X

**DEFENDANT ITALIA VIGNIERI'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**

        Defendant Italia Vignieri ("Vignieri" or "Defendant") by and through her undersigned counsel, hereby moves this Court for entry of an Order pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP") granting summary judgment in favor of defendant and against plaintiff Jeffrey S. Yager, M.D. d/b/a Yager Esthetics|Estetica™ ("Plaintiff" or "Yager"). Defendant respectfully refers the Court to its Rule 56.1 Statement for a recitation of material and undisputed facts and submits the within memorandum of law highlighting the bases for this motion.

### RELIEF REQUESTED AND STANDARD OF REVIEW

        Vignieri seeks a grant of summary judgment dismissing this case in its entirety on the grounds that: (1) this Court does not have subject-matter jurisdiction because plaintiff is an undisputedly local, New York-centered medical practice engaging solely in intrastate commerce and cannot avail itself of the federal cause of action established pursuant to the Defend Trade

Secrets Act, 18 U.S.C. § 1831, *et seq.* ("DTSA"), (2) plaintiff has failed to provide any evidence establishing that the categories of information identified in its Amended Complaint are viable trade secrets, and (3) even (favorably) inferring that plaintiff's information is protectable, there is no record evidence that defendant misappropriated plaintiff's information under the law.

Summary judgment must be granted where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." FRCP 56(c). A successful movant must demonstrate the absence of a genuine issue of material fact … [and] the burden is then on the non-moving party to set forth specific facts raising a genuine issue of fact for trial." *United States ex. rel. Romano v. N.Y. Presbyterian*, 426 F.Supp.2d 174, 177 (SDNY 2006) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24)(1986)). Vignieri is entitled to summary judgment against plaintiff for the reasons explained below.

## ARGUMENT

**I.     The Court Lacks Subject-Matter Jurisdiction Over Plaintiff's Federal Law Claim and Should Dismiss Plaintiff's Action in Its Entirety.**

This Court must dismiss plaintiff's claim under the DTSA because the Court lacks subject-matter jurisdiction.[1] Plaintiff asserts that the Court has original jurisdiction under 28 U.S.C. § 1331 based solely on plaintiff's claim under the DTSA. (FAC at ¶ 3.) The DTSA provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection *if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce*." § 1836(b)(1) (emphasis added.) This Court lacks subject matter jurisdiction because plaintiff is not the owner of a trade secret related to a "service used

---

[1] *See* Fed.R.Civ.P 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.")

in, or intended for use in, interstate or foreign commerce." §1836(b)(1). Instead, plaintiff alleges that he is an owner of trade secrets related to medical services that he provides only in the State of New York. (FAC at ¶¶ 6, 8.)

### A. Plaintiff Does Not Provide Any Services Used In Interstate or Foreign Commerce.

Plaintiff admits that he is licensed to practice medicine only in the State of New York. (FAC at ¶ 6.) Plaintiff further admits that his business, Yager Esthetics, is located and provides services only in New York. (*Id.* at ¶¶ 8, 13) ("Yager Esthetics' … principal place is located at 130 Fort Washington Avenue, New York, New York 10032…[and] has served the Latino Community continuously since 1998.").) Plaintiff explains on his website that he "established a center of excellence in cosmetic plastic surgery of the face, breast, and body dedicated to the Hispanic community [in Washington Heights]." (Ex. 2 to the Declaration of Nicole Coward, dated September 8, 2017 ("Coward Decl.").)  In his own words, plaintiff is "as close as what you can get to a community cosmetic surgeon, if there is such a thing." (Ex. 3 to the Coward Decl.).

Moreover, plaintiff alleges throughout the complaint that defendant "interfered with Plaintiff's practice of medicine in the State of New York" *and nowhere else*. (FAC at ¶ 28; *see also id.* at ¶¶ 37, 49, 93, 94, and 100.)

Based on the record evidence, it cannot be disputed that plaintiff's cosmetic surgery practice is a local service, and not a "service used in, or intended for use in, interstate or foreign commerce." §1836(b)(1). The Second Circuit has not yet construed the DTSA's language requiring a trade secret to be "related to a product or service used in, or intended for use in, interstate or foreign commerce." §1836(b)(1). However, "[s]tatutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of the

language accurately expresses the legislative purpose." *United States v. Aleynikov*, 676 F.3d 71, 76 (2d Cir. 2012) (internal quotation marks and citation omitted). The plain meaning of § 1836(b)(1) is that the plaintiff must provide a service not just in his State, but in other States or countries. In this case, it is undisputed that plaintiff does not provide his medical services in any other States or countries. He only provides medical services in the State of New York.

Therefore, plaintiff cannot establish any alleged trade secrets that are related to services used in interstate or foreign commerce. This conclusion is reinforced by the fact that in the context of personal jurisdiction, New York courts have uniformly held that where a doctor or other medical provider "renders medical services wholly within his own State, he cannot be said to be engaging in interstate commerce." *Ingraham v. Carroll*, 90 N.Y.2d 592, 599 (1997) (deciding whether plaintiff established that defendant physician "derives substantial revenue from interstate or international commerce" for purposes of satisfying the long-arm provisions of CPLR 302(a)(3)(ii).). *See also Pincione v. D'Alfonso*, 2011 WL 4089885, at *10 (stating that in *Ingraham*, "a physician who only saw patients in Vermont did not derive substantial revenue from interstate commerce, even though he treated patients from other states.")

**B. This Court Should Decline to Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims.**

Plaintiff's DTSA claim is the only possible basis for federal jurisdiction under 28 U.S.C. § 1331. This claim must be dismissed for lack of subject-matter jurisdiction (as well as the separate reasons stated *infra)*. Therefore, this Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims and dismiss them without prejudice.

Pursuant to 28 U.S.C. § 1367(a)(3), "district courts may decline to exercise supplemental jurisdiction over a claim under subjection (a) if … the district court has dismissed all claims over

4

which it has original jurisdiction." It is well settled that "[w]here, as here, the court has dismissed before trial the only basis for federal jurisdiction, the court should decline to exercise jurisdiction over the pendent state claims." *Somn v. Total Community Management Corp.*, 494 F. Supp. 2d 153, 160 (EDNY 2007); *see also Fields v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 301 F. Supp. 2d 259, 264 (SDNY 2004) (declining to accept supplemental jurisdiction over state law claims where sole federal claim was dismissed with prejudice).

Based on the foregoing, this Court must dismiss plaintiff's claim under the DTSA for lack of subject-matter jurisdiction, and does not need to reach whether plaintiff can establish that defendant misappropriated trade secrets in violation of the Act. However, if the Court were to find that it has subject-matter jurisdiction, it still must dismiss plaintiff's DTSA claim for the reasons set forth below. No reasonable jury could find that defendant misappropriated any trade secrets, and therefore summary judgment in favor of defendant should be granted.

## II. Defendant Did Not Misappropriate Trade Secrets.

### A. The Categories of Information Allegedly Misappropriated Do Not Qualify as Trade Secrets.

The complaint takes the monopolistic view that any materials used by a particular business in its day-to-day operations – no matter how standard or mundane – are trade secrets. The DTSA, defines a "trade secret" as "all forms and types of business, scientific, technical, economic, or engineering information . . . *if* (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential from not being known to and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the

information." (18 U.S.C. §1839(3)(a) and (b) (*emphasis added*)).  The record establishes that the identified categories, as actually used by plaintiff in its business, are not secret and do not qualify as viable trade secrets.

Plaintiff claims that its "professional and medical patient lists, data and related information, advertising data, slide show presentations, business logos and promotional materials" are confidential, proprietary and protected as trade secrets." (FAC at ¶ 33).  At Yager, Vignieri – along with Yager employees and third-party vendors – regularly worked with (1) excel spreadsheets containing patient names and email addresses ("Patient Lists"), (SMF ¶¶ 12,13,14) (2) educational and promotional slide show presentations that were presented to the public ("Marketing Presentations"), (SMF ¶ 13) (3) medical procedure consent forms provided to patients ("Consent Forms"), (SMF ¶ 13) and (4) business logos and other promotional materials associated with the marketing and advertising of Yager's marketing services ("Promotional Materials"). (SMF ¶ 13).  Most notably, Vignieri *never* accessed or used confidential patient medical information subject to HIPPAA, such as patient histories or medical charts. (SMF ¶¶15, 16).

To the extent plaintiff would even be considered the "owner" of the purportedly confidential materials, plaintiff fails to meet the requirement that measures be taken to keep Marketing Presentations, Consent Forms, Promotional Materials and Patient Lists secret.

As a practical matter, Marketing Presentations and Promotional Materials are meant to be shared and disseminated to the public.  Slide slow presentations, in particular are designed to be shown to and seen by groups of people.

In addition, plaintiff, like any business, benefits from potential customers seeing and remembering its logos and advertisements. A successful marketing and promotional campaign is measured by the amount of people it reaches.

Further, plaintiff was required to provide Consent Forms to patients undergoing medical procedures.  Thus, every patient who visited the office would have seen and/or used these forms, thus plaintiff could not have kept them secret.

With respect to Patient Lists, the record shows that several individuals, both inside and outside of plaintiff's business were provided the patient lists to use in plaintiff's marketing campaigns and email solicitations. (SMF ¶¶ 13; *see also*, Coward Decl. at ¶9, Exhibit 7). Moreover, the information compiled in the list – names of individuals who have had or who are interested in cosmetic surgery or related services – could be compiled by anyone in the industry with minimal diligence. (*See In re Document Technologies Litigation*, 2017 WL 2895945 at *8 (SDNY, Index No. 17-cv-2405, July 6, 2017) (finding "rudimentary" spreadsheet compiled by employee containing names, locations, contacts and revenue estimates for prospective clients "nonprotectable")).

### B. Vignieri Did Not Misappropriate Any of Plaintiff's Materials.

The record is absent of any evidence that Vignieri misappropriated plaintiff's information or disclosed plaintiff's information to anyone other than herself. Under the DTSA, misappropriation is shown if a party establishes "an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or

through a person who owed such a duty." *Syntel Sterling Best Shores Mauritius Ltd. V. Trizetto Grp. Inc.*, No 15-CV-211 (LGS)(RLE), 2016 WL 5338550, at *6, (SDNY, September 23, 2016).

<u>First</u>, as noted above, plaintiff's materials do not qualify as trade secrets. <u>Second</u>, even if plaintiff did have protectable information, Vignieri has not used any improper means to acquire plaintiff's information. All information that she had access to was provided to her during the course of her work at Yager.

Vignieri does not dispute that she forwarded work materials from her work email address to her personal email addresses during her time working at Yager. (SMF ¶¶8,10,11). Indeed, it was necessary for Vignieri to do so given that (1) she did not receive an email address at Yager until one or two years after working with plaintiff (SMF ¶9), (2) she did not have a dedicated computer or desk in plaintiff's offices and often worked from home (SMF ¶7), (3) plaintiff's computer system did not allow for remote access, requiring her to email documents and materials to her personal account when she needed to complete tasks at home. (SMF ¶ 9).

Moreover, it is not disputed that Vignieri was authorized to use her personal email in connection with Yager's materials. Indeed, both Dr. Yager and Tanya Castro also sent emails and materials to Vignieri's personal and work email addresses. (Coward Decl. Exs. 5,6,7).

Nonetheless, plaintiff is attempting to characterize Vignieri's email forwarding between herself – done throughout the time she worked at Yager – as wrongful. This is a red herring because, as is also established in the record, Vignieri never shared or disclosed Yager's materials to anyone (other than counsel) during or after her time working with the company. (SMF ¶ 24).

Plaintiff essentially seeks to restrain Vignieri merely because she had access to Yager's information under a presumed theory that, because information "resides in her head," she will

inevitably use it in connection with working with a competitor. (*See Free Country Ltd. v. Drennen*, Index No. 16-CV 8746(JSR), 2016 WL 7635516 at *13 (SDNY Dec. 30, 2016)).

However, neither the DTSA or New York law recognizes such an "inevitable disclosure" theory as a basis to restrain a person's right to work elsewhere. Indeed, "New York law recognizes a specific means for plaintiff to protect information under such circumstances: a non-competition provision." *Id.* It is undisputed that no employment agreement, non-compete/non-solicitation agreement or confidentiality agreement ever existed between Vignieri and plaintiff.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment should be granted in all respects, and the Court should grant defendant such other and further relief as deemed just and proper.

Dated: September 8, 2017
　　　New York, New York

_____
Nicole J. Coward
Comrie & Coward LLP
*Attorneys for Defendant*
148 South Long Beach Avenue
Freeport, New York 11520
T:  516.544.4292
F:  516.623.5281
E: ncoward@candcllp.com